**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------X

MARY HOSKIN,

                             Plaintiff,　　　　**Civil Action No. 1:24-cv-03181-RML**

       -against-

DELTA AIR LINES, INC, ERMC AVIATION　　Trial by Jury Demanded
LLC, and JOHN DOE (a fictitious designation
for a presently unknown wheelchair assistant
employee of Delta Air Lines, Inc. and ERMC
Aviation LLC),

                            Defendants.

-----------------------------------------X

## **FIRST AMENDED COMPLAINT**

The plaintiff, **MARY HOSKIN,** (hereinafter "**HOSKIN**"), by her attorneys, **MORGAN & MORGAN NY PLLC**, complaining of the defendants, alleges, upon information and belief, the following:

## PRELIMINARY STATEMENT

1. This is a civil action seeking monetary relief against defendants, **DELTA AIR LINES, INC.,** (hereinafter "**DELTA**"), **ERMC AVIATION LLC** (hereinafter "**ERMC**") and **JOHN DOE** (a fictitious designation for a presently unknown wheelchair assistant employee of **DELTA** and **ERMC**), (hereinafter "**JOHN DOE**").

2. Plaintiff brings this action against defendants for damages arising from the negligence of the defendants in permitting a dangerous condition to exist on their property, which caused the subject accident, giving rise to plaintiff's injuries.

## JURISDICTION

3. Plaintiff initially brought this action against defendants, **DELTA** and **JOHN DOE**, and said defendants removed the action to the instant Court under 28 U.S.C. § 1332.

## VENUE

4. Plaintiff respectfully demands a Trial by Jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

5. That the accident complained of herein occurred in the City of New York, County of Queens and State of New York.

## PARTIES

6. Plaintiff, **HOSKIN**, is a citizen of the United States and at all times relevant, a resident of the State of Maine.

7. That at all times hereinafter mentioned, defendant, **DELTA**, was a domestic business corporation and a common carrier offering scheduled air transportation to the general public, including but not limited to providing airline flights in and out of various New York airports, including John F. Kennedy ("JFK") Airport.

8. That at all times hereinafter mentioned, defendant, **DELTA**, was a foreign corporation and/or limited liability corporation, with its principal place of business in Atlanta, Georgia, and incorporated in Delaware, and is a business licensed and registered in New York and transacts a substantial amount of business in the State of New York.

9. That at all times hereinafter mentioned, defendant, **ERMC**, was a domestic corporation, offering customer assistance services, such as wheelchair services and escort services for individuals traveling throughout New York airports, including JFK Airport.

10. That at all times hereinafter mentioned, defendant, **ERMC**, was a foreign corporation and/or limited liability corporation, with its principal place of business in Atlanta, Georgia, and incorporated in Delaware, and is a business licensed and registered in New York and transacts a substantial amount of business in the State of New York.

11. That at all times hereinafter mentioned, defendant, **JOHN DOE,** was an employee of defendant, **DELTA**.

12. That at all times hereinafter mentioned, defendant, **JOHN DOE,** was an employee of defendant, **ERMC**.

13. That defendant, **JOHN DOE,** currently resides in the State of New York.

14. That at all times hereinafter mentioned, defendant, **JOHN DOE**, was acting within the scope of employment of defendant, **DELTA**.

15. That at all times hereinafter mentioned, defendant, **JOHN DOE**, was acting within the scope of employment of defendant, **ERMC**.

## SUMMARY OF THE CASE

16. Plaintiff repeats and realleges each and every allegation set forth above, as though fully set forth herein.

17. That at all times hereinafter mentioned, defendant, **DELTA**, was required by law to provide gate-to-gate escort services to vulnerable travelers.

18. That at all times hereinafter mentioned, defendant, **ERMC**, was required by law to provide gate-to-gate escort services to vulnerable travelers.

19. That at all times hereinafter mentioned, plaintiff, **HOSKIN**, was one such vulnerable traveler.

20. That plaintiff, **HOSKIN**, purchased a JetBlue Airlines ticket that included gate-to-gate escort services requested by plaintiff, **HOSKIN**, and her family.

21. That defendant, **DELTA**, by its employees, agents, and/or representatives, including defendant, "**JOHN DOE**", abandoned plaintiff, **HOSKIN**, inside the JFK Airport, Terminal 4.

22. That defendant, **ERMC**, by its employees, agents, and/or representatives, including defendant, "**JOHN DOE**", abandoned plaintiff, **HOSKIN**, inside the JFK Airport, Terminal 4.

23. That defendant, **DELTA**, by its employees, agents, and/or representatives, including defendant, "**JOHN DOE**", knew, or should have known, that plaintiff, **HOSKIN**, was a "fall risk".

24. That defendant, **ERMC**, by its employees, agents, and/or representatives, including defendant, "**JOHN DOE**", knew, or should have known, that plaintiff, **HOSKIN**, was a "fall risk".

25. That while trying to find her flight home on her own, plaintiff, **HOSKIN**, took a catastrophic fall, sustaining injuries that led to severe injuries, *inter alia*, a fractured hip that required complex surgery.

26. That at all times hereinafter mentioned, defendants, **DELTA** and **"JOHN DOE"**, failed to provide essential and legally required service.

27. That at all times hereinafter mentioned, defendants, **ERMC** and **"JOHN DOE"**, failed to provide essential and legally required service.

## FACTS

28. Plaintiff repeats and realleges each and every allegation set forth above, as though fully set forth herein.

29. This is an action arising from significant injuries sustained by plaintiff, **HOSKIN**, on September 19, 2023, at approximately 12:00 p.m., in the County of Queens, State of New York.

30. Plaintiff, **HOSKIN**, has a son, Charles Holt, who lives in Lancaster, Pennsylvania.

31. On August 7, 2023, at approximately 6:45 p.m., plaintiff's son purchased tickets from **DELTA** for transportation on September 19, 2023, from Portland International Jetport ("PWM") to Baltimore Washington International Thurgood Marshall Airport ("BWI"), with a layover at JFK, for $306.40.

32. As part of purchasing that ticket, plaintiff's son requested "wheelchair assistance from plane door to plane door."

33. Plaintiff, **HOSKIN**, received confirmed assessments for "Fall Risk" due to issues with walking and balance, and had fallen multiple times in the months prior to the subject incident.

34. To this end, plaintiff, **HOSKIN**, was a vulnerable adult that could lose balance and/or fall when outside of a controlled environment, and absent assistance.

35. Defendant, **DELTA**, provides mobility assistance, among other services, to seniors and elderly travelers, and those with disabilities, among others, as required by law.

36. Mobility escort services are provided by defendant, **DELTA**, "to/from the gate," "on/off the aircraft," and "to/from connecting flights", among other services provided.

37. Defendant, **ERMC**, provides mobility assistance, among other services, to seniors and elderly travelers, and those with disabilities, among others, as required by law.

38. Mobility escort services are provided by defendant, **ERMC**, "to/from the gate," "on/off the aircraft," and "to/from connecting flights", among other services provided.

39. The particular language provided to plaintiff's son pursuant to this request outlined: "[f]rom the moment you arrive, you can utilize an airport wheelchair . . . [w]e offer wheelchair assistants who will guide you through the terminal, security and to your gate . . [o]nce at the gate, our wheelchair assistants will bring you near one of our gate agents for assistance in boarding."

### **ACCIDENT**

40. Plaintiff repeats and realleges each and every allegation set forth above, as though fully set forth herein.

41. Plaintiff's initial flight on **DELTA** Flight "DL5287" departed PWM Airport in Portland, Maine, on September 19, 2023, 10:27 a.m., and arrived at JFK Airport in Queens, New York, at approximately 12:00 p.m.

42. Plaintiff, **HOSKIN**, deplaned in JFK with her cane, and was provided a wheelchair by defendant, **DELTA**.

43. Plaintiff, **HOSKIN**, deplaned in JFK with her cane, and was provided a wheelchair by defendant, **ERMC**.

44. In accordance with the special services agreement, plaintiff, **HOSKIN**, was met by her gate-to-gate escort, defendant, "**JOHN DOE**", who escorted her from the arrival gate at DL5287, heading toward her next flight on DL5380.

45. Plaintiff, **HOSKIN**, and her family relied on this service provided by defendant, **DELTA**, in making sure plaintiff, **HOSKIN**, could travel safely.

46. Plaintiff, **HOSKIN**, and her family relied on this service provided by defendant, **ERMC**, in making sure plaintiff, **HOSKIN**, could travel safely.

47. The attendant, defendant, "**JOHN DOE**", pushed plaintiff, "**HOSKIN**", up a ramp and into the terminal at Terminal 4.

48. The attendant, defendant, "**JOHN DOE**", was a white male, approximately 6 feet tall, clean shaven, average build, wearing blue shirt and pants.

49. Plaintiff, "**HOSKIN**", en route to the next gate for Flight DL5380, requested that the attendant stop at a gift shop, to which the attendant, defendant, "**JOHN DOE**", agreed.

50. Plaintiff got out of the wheelchair momentarily, and took a few steps toward the shop and saw the attendant, defendant, "**JOHN DOE**", turn the wheelchair around to leave, to which plaintiff asked, "you are going to come back to get me right?" and the attendant,

defendant, "**JOHN DOE**", responded, "no, I can't, I would have to walk all the way around the airport".

51. Defendant, "**JOHN DOE**", then asked, "you can get yourself back upstairs?" to which plaintiff, **HOSKIN**, responded, "I don't know".

52. Defendant, "**JOHN DOE**", then left plaintiff, **HOSKIN**, to fend for herself and never returned.

53. After making some purchases at the shop, plaintiff, **HOSKIN**, made her way toward a Mexican food shop, which was approximately 30-40 feet away.

54. After purchasing some food at the Mexican food shop, plaintiff, **HOSKIN**, took two steps toward a seating area, and lost balance and fell, causing significant injury.

55. Medical personnel and several other uniformed personnel responded to plaintiff's, **HOSKIN**, fall, as she was writhing in significant pain.

56. Because plaintiff, **HOSKIN**, did not know anyone in New York, she opted against going to a local emergency room for medical attention, and asked to be assisted to her connecting flight DL 5380. She was provided a wheelchair and was escorted to the gate for the flight.

57. Plaintiff, **HOSKIN**, proceeded on DL5380 to BWI Airport in Baltimore, Maryland, and was provided with an attendant once she landed in Baltimore.

58. Within BWI Airport, the attendant escorted plaintiff, **HOSKIN**, to a bathroom, wherein she could not get up from the toilet and required assistance.

59. The attendant then escorted plaintiff outside the airport to meet plaintiff's son, Charles.

60. Had plaintiff, **HOSKIN**, and her family known that the attendant, defendant, "**JOHN DOE**", would leave plaintiff, **HOSKIN**, unattended in the middle of airport, they would never have taken this flight.

## PLAINTIFF'S INJURIES

61. Plaintiff repeats and realleges each and every allegation set forth above, as though fully set forth herein.

62. Plaintiff, **HOSKIN**, sustained a left hip displaced valgus impacted femoral neck fracture, which required immediate surgery, which was performed on September 20, 2023, involving a left hip closed reduction percutaneous screw fixation.

63. Plaintiff, **HOSKIN**, did not have this injury before the fall.

## FIRST CAUSE OF ACTION
### Negligence of Defendants, DELTA and "JOHN DOE"

64. Plaintiff repeats and realleges each and every allegation set forth above, as though fully set forth herein.

65. Defendant, **DELTA**, is a common carrier, and as such, defendant, **DELTA**, owes its passengers the highest degree of care and skill practicable for it to exercise.

66. In the course of the business of defendant, **DELTA**, it regularly provides wheelchair gate-to-gate escorts for passengers, including attendant escorts for seniors and elderly passengers and those at high risk of falling and balance issues, such as plaintiff, **HOSKIN**, a vulnerable adult passenger.

67. The United States Department of Transportation has enacted regulations codified at 14 C.F.R. Part 382, and includes a duty by defendant, **DELTA**, to accommodate plaintiff's, **HOSKIN**, disabilities as she traveled.

68. Defendant, **DELTA**, is an air carrier within the definition of 14 C.F.R. § 382.5.

69. 14 C.F.R. § 382.91 provides that air carriers such as defendant, **DELTA**, are required to ensure that individuals with disabilities are provided with assistance in making flight connections and transportation between gates, among other requirements, when requested by or on behalf of a passenger with a disability.

70. In advance of traveling on defendant's, **DELTA**, planes, plaintiff, **HOSKIN**, and her family requested that defendant, **DELTA**, provide plaintiff wheelchair gate-to-gate assistance, including, but not limited to, "[f]rom the moment you arrive, you can utilize an airport wheelchair . . . [w]e offer wheelchair assistants who will guide you through the terminal, security and to your gate . . [o]nce at the gate, our wheelchair assistants will bring you near one of our gate agents for assistance in boarding."

71. It was the duty and responsibility of defendant, **DELTA**, to provide this gate-to-gate escort to plaintiff, **HOSKIN**, at JFK Airport between her DL5287 flight that arrived in JFK Airport on September 19, 2023, at approximately 12:00 p.m., and her connecting flight on DL5380 that was scheduled to depart from JFK Airport at 2:59 p.m.

72. Upon her arrival, defendant, **DELTA**, through its employee and/or agent, defendant, **"JOHN DOE"**, did provide an initial wheelchair escort, but thereafter failed to exercise the highest degree of care and skill practicable for the protection and safety of plaintiff and breached its duty by failing to provide her the required gate-to-gate escort between her DL5287 and DL5380 flights.

73. It was foreseeable that plaintiff, **HOSKIN**, would be injured without the required gate-to-gate escort between flights.

74. Defendant, **DELTA**, through its employee and agent, defendant "**JOHN DOE**", failed to exercise the highest degree of care and skill, required of it as a common carrier, for the protection and safety of plaintiff, **HOSKIN**.

75. Plaintiff, **HOSKIN**, sustained critical injuries as a direct and proximate result of defendant's, **DELTA**, through its employee and agent, defendant "**JOHN DOE**", acts and omissions and failure to exercise the highest degree of care practicable, resulting in a severe fracture to her left hip, requiring complex hip surgery on September 20, 2023.

76. As a direct result of the failure of defendant, **DELTA**, through its employee and agent, defendant "**JOHN DOE**", to exercise the highest degree of care practicable, plaintiff, **HOSKIN**, has incurred damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### Negligence of Defendants, ERMC and "JOHN DOE"

77. Plaintiff repeats and realleges each and every allegation set forth above, as though fully set forth herein.

78. Defendant, **ERMC**, is a common carrier, and as such, defendant, **ERMC**, owes its passengers the highest degree of care and skill practicable for it to exercise.

79. In the course of the business of defendant, **ERMC**, it regularly provides wheelchair gate-to-gate escorts for passengers, including attendant escorts for seniors and elderly passengers and those at high risk of falling and balance issues, such as plaintiff, **HOSKIN**, a vulnerable adult passenger.

80. The United States Department of Transportation has enacted regulations codified at 14 C.F.R. Part 382, and includes a duty by defendant, **ERMC**, to accommodate plaintiff's, **HOSKIN**, disabilities as she traveled.

81. Defendant, **ERMC**, is an air carrier within the definition of 14 C.F.R. § 382.5.

82. 14 C.F.R. § 382.91 provides that air carriers such as defendant, **ERMC,** are required to ensure that individuals with disabilities are provided with assistance in making flight connections and transportation between gates, among other requirements, when requested by or on behalf of a passenger with a disability.

83. In advance of traveling on defendant's, **ERMC**, planes, plaintiff, **HOSKIN**, and her family requested that defendant, **ERMC**, provide plaintiff wheelchair gate-to-gate assistance, including, but not limited to, "[f]rom the moment you arrive, you can utilize an airport wheelchair . . . [w]e offer wheelchair assistants who will guide you through the terminal, security and to your gate . . [o]nce at the gate, our wheelchair assistants will bring you near one of our gate agents for assistance in boarding."

84. It was the duty and responsibility of defendant, **ERMC**, to provide this gate-to-gate escort to plaintiff, **HOSKIN**, at JFK Airport between her DL5287 flight that arrived in JFK Airport on September 19, 2023, at approximately 12:00 p.m., and her connecting flight on DL5380 that was scheduled to depart from JFK Airport at 2:59 p.m.

85. Upon her arrival, defendant, **ERMC**, through its employee and/or agent, defendant, **"JOHN DOE"**, did provide an initial wheelchair escort, but thereafter failed to exercise the highest degree of care and skill practicable for the protection and safety of plaintiff and breached its duty by failing to provide her the required gate-to-gate escort between her DL5287 and DL5380 flights.

86. It was foreseeable that plaintiff, **HOSKIN**, would be injured without the required gate-to-gate escort between flights.

87. Defendant, **ERMC**, through its employee and agent, defendant "**JOHN DOE**", failed to exercise the highest degree of care and skill, required of it as a common carrier, for the protection and safety of plaintiff, **HOSKIN**.

88. Plaintiff, **HOSKIN**, sustained critical injuries as a direct and proximate result of defendant's, **ERMC**, through its employee and agent, defendant "**JOHN DOE**", acts and omissions and failure to exercise the highest degree of care practicable, resulting in a severe fracture to her left hip, requiring complex hip surgery on September 20, 2023.

89. As a direct result of the failure of defendant, **ERMC**, through its employee and agent, defendant "**JOHN DOE**", to exercise the highest degree of care practicable, plaintiff, **HOSKIN**, has incurred damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
### Negligent Training and Supervision by Defendants, DELTA

90. Plaintiff repeats and realleges each and every allegation set forth above, as though fully set forth herein.

91. Defendant, **DELTA**, through its employee and agent, "**JOHN DOE**", acted negligently in failing to properly abide by the regulations set forth governing the transportation of high-risk elderly passengers.

92. In that regard, 14 C.F.R. § 382.141 requires that defendant, **DELTA**, properly train employees, such as defendant, **"JOHN DOE"**, in responding to passengers with high-risks such as fall or balance risks.

93. Defendant, **DELTA**, was negligent in failing to properly train and/or supervise its agents and/or employees, including defendant, **"JOHN DOE"**, in the legally responsible way of dealing with vulnerable passengers.

94. That this incident falls within one or more of the exceptions set forth in CPLR 1602.

95. That by reason of the foregoing, plaintiff, **MARY HOSKIN,** has been damaged by defendants in a sum which exceeds the jurisdictional limits of all lower Courts.

### FOURTH CAUSE OF ACTION
### Negligent Training and Supervision by Defendants, ERMC

96. Plaintiff repeats and realleges each and every allegation set forth above, as though fully set forth herein.

97. Defendant, **ERMC**, through its employee and agent, "**JOHN DOE**", acted negligently in failing to properly abide by the regulations set forth governing the transportation of high-risk elderly passengers.

98. In that regard, 14 C.F.R. § 382.141 requires that defendant, **ERMC**, properly train employees, such as defendant, "**JOHN DOE**", in responding to passengers with high-risks such as fall or balance risks.

99. Defendant, **ERMC**, was negligent in failing to properly train and/or supervise its agents and/or employees, including defendant, "**JOHN DOE**", in the legally responsible way of dealing with vulnerable passengers.

100. That this incident falls within one or more of the exceptions set forth in CPLR 1602.

101. That by reason of the foregoing, plaintiff, **MARY HOSKIN,** has been damaged by defendants in a sum which exceeds the jurisdictional limits of all lower Courts.

**WHEREFORE**, plaintiff, **MARY HOSKIN,** demands judgment against defendants, as to all causes of action, both jointly and severally, for compensatory damages in an amount to be

determined by a jury, all together with the interests, costs and disbursements of this action; and such other and further relief as appears just and proper.

Dated: New York, New York
   October 2, 2024

                 Yours, etc.,

                 _____
                 **By: Moses Ahn, Esq.**
                 **MORGAN & MORGAN NY PLLC**
                 *Attorneys for Plaintiff*
                 **199 Water Street, 15th Floor**
                 **New York, New York 10038**
                 **TEL: (201) 209-3425**
                 **FAX: (201) 209-3475**

**To:**

**DELTA AIR LINES, INC.**
c/o FOX ROTHSCHILD LLP
*Attorneys for Defendant*
101 Park Avenue, 17th Floor
New York, New York 10178
TEL: (646) 601-7627

**ERMC AVIATION LLC**
Via Secretary of State
80 State Street
Albany, NY 12207

**JOHN DOE**
**c/o DELTA AIR LINES, INC**
Via Secretary of State
80 State Street
Albany, NY 12207

**JOHN DOE**
**c/o ERMC AVIATION LLC**
Via Secretary of State
80 State Street
Albany, NY 12207